IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

WILLIAM RAY BOLING                                                          PLAINTIFF

v.                                          3:13CV085-JLH-JJV

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration                                                              DEFENDANT

## Instructions for Recommended Disposition

The following recommended disposition was prepared for U.S. District Judge J. Leon

Holmes.   A party to this dispute may object to this recommendation in writing.   An

objection must be specific and state the factual and/or legal basis for the objection.   An

objection to a factual finding must identify the finding and the evidence supporting the

objection.   Objections must be filed with the Clerk of the Court no later than 14 days from

the date of this recommendation.[1]   The objecting party must serve the opposing party with

a copy of an objection.   Failing to object within 14 days waives the right to appeal questions

of fact.[2]   If no objections are filed, Judge Holmes may adopt the recommended disposition

without independently reviewing the record evidence.   An objecting party who seeks to

submit new, different, or additional evidence, or to obtain a hearing for that purpose, must

address the following matters as part of written objections: (1) why the record before the

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives
right to de novo review and to appeal magistrate judge's findings of fact).

magistrate judge was inadequate, (2) why the evidence was not presented to the magistrate judge, and (3) details and/or copies of any testimony and/or documents to be proffered at a hearing.  Based on this submission, Judge Holmes will determine the need for a hearing.

## Recommended Disposition

William Ray Boling seeks judicial review of the denial of his third application for social security disability benefits.[3]  Boling was 19 years old when he applied for benefits. Initially, he claimed he had been disabled since he was five years old.[4]  His attorney amended his onset date to correspond to his application date.[5]  Boling bases disability on bipolar disorder and attention deficit hyperactivity disorder (ADHD).[6]

As a child, Boling was covered by Medicaid.  He received mental health treatment for his impairments.  When Boling turned 18, his Medicaid coverage expired.[7]  He applied for disability benefits; that application — the second application — was denied.[8]  Fourteen months later, he applied again.

**The Commissioner's decision**.   After considering the application, the Administrative Law Judge (ALJ) determined Boling has severe impairments — bipolar

---

[3]SSA record at pp. 107 & 111.

[4]*Id*.

[5]*Id*. at p. 28.

[6]*Id*. at pp. 33 & 137.

[7]*Id*. at p. 134.

[8]*Id*. at p. 133.

disorder and ADHD[9] — but he can work at all exertional levels with certain non-exertional limitations.[10]   Because a vocational expert identified work for a person with Boling's limitations, the ALJ determined that Boling is not disabled and denied the application.[11]

After the Appeals Council denied a request for review,[12] the ALJ's decision became the Commissioner's final decision for judicial review.[13]   Boling filed this case to challenge the decision.[14]   In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15]   This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

---

[9]*Id*. at p. 14.

[10]*Id*. at p. 16.

[11]*Id*. at p. 18.

[12]*Id*. at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry # 1.

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Boling's allegations**.  Boling maintains the ALJ should have identified borderline intellectual functioning as a severe impairment and included that limitation in the hypothetical question posed to the vocational expert.  He also contends the hypothetical question should have included his problems with anger.  He characterizes the ALJ's evaluation of his credibility as a backwards analysis, asserting that the ALJ had already made up his mind about credibility prior to the hearing.  He claims the ALJ failed to acknowledge the Commissioner's burden at step 5 of the disability-determination process.  He describes the agency proceeding as kangaroo court.  For these reasons, he argues, substantial evidence does not support the ALJ's decision.

**Applicable legal principles**.  In reviewing a decision denying an application for disability benefits, the Court must determine whether the decision is supported by substantial evidence in the record as a whole.[16]  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate to support the decision.[17]  Because Boling has no physical impairment, the Court must consider the non-exertional limitations placed on Boling's ability to work.  The ALJ imposed the following limitations: (1) work where interpersonal contact is incidental to work performed, and (2) where the complexity of tasks is learned by short demonstration or requires no more than

---

[16]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[17]*Slusser*, 557 F.3d at 925.

one month of experience.[18]  The Court must determine whether a reasonable mind would accept the evidence as adequate to show Boling can work within these limitations.

**Substantial evidence exists**.  An ALJ's determination about a claimant's ability to work must be supported by medical evidence; the claimant's subjective allegations are not enough to prove he is disabled.[19]  Therein lies the problem for Boling.  Most of his medical evidence predates his application.  The remote evidence establishes diagnoses of bipolar disorder and ADHD.  Boling received mental health treatment for these impairments for several years through Medicaid.

The remote evidence shows that when Boling received treatment, he did fairly well. He had problems with anger and irritability, perhaps flowing from his circumstances: a father in and out of prison, a mother with mental health and drug abuse issues, physical abuse by his mother's boyfriend, removal from his mother's home due to neglect and endangerment, and difficulty with school.[20]  Those circumstances would make many children angry and irritable.  Three months before he applied, his therapist reported that Boling's overall functioning had significantly improved; he experienced significantly fewer anger outbursts.[21]

---

[18]SSA record at p. 16.

[19]*Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

[20]SSA record at pp. 212, 227 & 387.

[21]*Id*. at p. 231.

The remote evidence includes evidence of intellectual functioning.   Boling underwent IQ testing at age 17.[22]  His scores placed him in the low average range of intellectual functioning.[23]  The evaluator conducting the testing reported that attention problems did not affect his performance on the tests.  The evaluator observed no problems with the ability to concentrate.[24]

Mental health experts reviewed the remote evidence and observed that treatment records reflect no severe symptoms; the records reflect significant progress with treatment.[25]  According to the experts, Boling can work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; and supervision required is simple, direct and concrete.[26]

The recent and more probative evidence — from the application date to the decision date — shows Boling continued mental health treatment for a few months after his Medicaid coverage expired, but then stopped.[27]  That treatment is the source of Boling's argument about borderline intellectual functioning.  In October 2010 when Boling was 19,

---

[22]*Id*. at p. 231.

[23]*Id*. at p. 197.

[24]*Id*. at p. 198.

[25]*Id*. at pp. 328 & 346.

[26]*Id*.

[27]*See id*. at p. 403 (first visit in Oct. 2010; last visit in Feb. 2010).

a new psychiatrist included borderline intellectual functioning in his diagnosis.[28]   The associated treatment note indicates the diagnosis was based on observation, not IQ testing.

Boling maintains the ALJ should have identified borderline intellectual functioning as a severe impairment, but the ALJ's reliance on IQ testing, rather than the psychiatrist's diagnosis, was reasonable.  The testing was done using industry standards for measuring adult IQ; none of the remote evidence suggests borderline intellectual functioning.  Because IQ testing shows Boling functions in the low average range, no reason existed for questioning a vocational expert about borderline intellectual functioning.[29]

Likewise, no reason existed for questioning a vocational expert about problems with anger.  Boling experiences significantly fewer anger outbursts with treatment.   His symptoms manifest in the absence of treatment.  According to the psychiatrist, Boling needs treatment; the lack medical insurance is a barrier to treatment.[30]

The evidence shows a need for mental health treatment, but disability benefits are not paid to provide medical insurance.  Instead, disabled persons receive medical insurance as a consequence of disability, because they are unable to obtain medical insurance through employment.  Boling's symptoms can be controlled with treatment.  "An impairment which

---

[28]*Id*. at p. 386.

[29]*Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) ("A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ.").

[30]SSA record at p. 393.

can be controlled by treatment or medication is not considered disabling."[31]

When the ALJ asked Boling why he is unable to work, Boling stated that he has trouble remembering how to do what his employer wants him to do, and he has trouble concentrating and staying focused.[32] He said he gets paranoid around people.[33] The ALJ's limitations accommodate these problems by restricting work to simple tasks involving limited contact with others.  A reasonable mind would accept the evidence as adequate to show Boling can work within the ALJ's limitations because treatment controls Boling's symptoms, and because the ALJ's restrictions respond to Boling's impairments.

Boling's argument about a backwards credibility analysis is "an argument concerning semantics and nothing more."[34]  The ALJ followed the required two-step process and considered the required factors to evaluate Boling's credibility.[35]  In actuality, Boling disagrees with the result, not the process.  Boling's impairments can be treated. Boling has responded to treatment.

Boling's argument about the Commissioner's step-five burden fails because the Commissioner acknowledged her burden and obtained vocational evidence about available

---

[31]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[32]SSA record at p. 28.

[33]*Id*. at p. 33.

[34]*Kamann v. Colvin*, 721 F.3d 945, 951-52 (8th Cir. 2013).

[35]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

work.[36]  A vocational expert identified representative jobs: cleaners like equipment cleaners, vehicle cleaners, and office cleaners, and kitchen helpers like dishwashers.[37]  No serious argument exists that Boling cannot do those jobs which do not require complex tasks or experience and require no more than incidental contact with others.  A reasonable mind would accept the vocational evidence as adequate to carry the Commissioner's burden, and to show work exists that Boling can do, regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[38]  Because such work exists, Boling is not disabled under social security disability law.

**Conclusion**.  Viewed as a whole, substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Boling's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

DATED this 24th day of June, 2014.

JOE VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[36]*Stewart v. Shalala*, 957 F.2d 581, 586 (8th Cir. 1992) (explaining that where "the claimant has a nonexertional impairment…the [Commissioner] must use vocational expert testimony or other similar evidence to meet the burden of showing the existence of jobs in the national economy that the claimant is capable of performing").

[37]SSA record at p. 35.

[38]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).